UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| JOHN W. BLAIR, JR. and REJOICE BLAIR, | ) ) ) |
| Plaintiffs, | ) ) 1:21-CV-00059-DCLC-CHS |
| v. | ) ) ) |
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 10]. Defendant responded in opposition [Doc. 12] and on May 3, 2021, the Court held a hearing on Plaintiffs' motion. For the reasons stated herein, Plaintiffs' motion is **DENIED**.

**I.     BACKGROUND**

On April 12, 2020, a tornado caused serious damage to Plaintiffs' home, rendering it uninhabitable. The following day, Plaintiffs submitted an insurance claim to Defendant for the damage to their home. Defendant provided Plaintiffs with temporary housing in a hotel until April 28, 2020 and, since then, has paid Additional Living Expenses ("ALE"), including rent for an apartment and temporary housing items through CRS Temporary Housing. Plaintiffs' insurance policy provides that payment of ALE is limited to "the shortest time required to repair or replace the damage" and that such payment "will not exceed the actual loss sustained or 24 months from the date of loss, whichever occurs first." [Doc. 1-2, pg. 55].

On April 20, 2020, Defendant completed an estimate and paid Plaintiffs for the repairs, which Defendant anticipated would take four months to complete. A week later, Plaintiffs'

1

contractor informed Defendant that he discovered water in the basement area of the home and Defendant instructed him to create a supplement for the additional damages, which he did. On May 18, 2020, Defendant issued payment for the supplemental damage. In early July 2020, Plaintiffs' contractor communicated with Defendant again regarding moisture in the basement and Defendant inspected the home to determine the cause. Defendant's inspection revealed what appeared to be preexisting cracks in the foundation which predated the date of the covered loss. Defendant instructed Plaintiffs' contractor to remove the sheetrock in the basement and, on July 31, 2020, Defendant inspected the home for a third time and discovered that the wood behind the sheetrock appeared to be rotted from long term exposure to water. Therefore, Defendant determined that such damage was not covered and communicated a partial denial to Plaintiffs.

In August 2020, Plaintiffs obtained representation from a public adjuster and all repairs came to a halt. From September 2020 to January 2021, Defendant extended the period of restoration on multiple occasions, with the final extension expiring at the end of February 2021. On February 24, 2021, Plaintiffs initiated an action in the Chancery Court of Hamilton County, Tennessee against Defendant for breach of contract, statutory bad faith pursuant to Tenn. Code Ann. § 56-7-105, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*. [Doc. 1, ¶¶ 1-2]. The chancery court issued a Temporary Restraining Order ("TRO") against Defendant, set to expire on March 5, 2021, which prevented Defendant from confiscating Plaintiffs' temporary housing items [Doc. 1-2, pg. 5]. On March 3, 2021, the chancery court entered an Agreed Order extending the TRO for a period of 60 days [Doc. 10-5]. Defendant removed the action to this Court on March 23, 2021 [Doc. 1].

On April 22, 2021, Defendant notified Plaintiffs that payment of ALE under the insurance policy would cease upon expiration of the TRO. Plaintiffs then filed the Emergency Motion for

Preliminary Injunction that is currently before the Court [Doc. 10]. Specifically, Plaintiffs request that the Court issue a preliminary injunction requiring Defendant to continue making ALE payments through the pendency of this lawsuit or until their entitlement to those benefits under the policy expires [*Id*. at pg. 1]. Defendant opposes Plaintiffs' motion and asserts that a preliminary injunction is inappropriate in this matter [Doc. 12].

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 73 (6th Cir. 2000)). In ruling on a motion for preliminary injunction, the Court must consider the following factors: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary*, 228 F.3d at 736 (citations omitted). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

## III. DISCUSSION

Upon considering the parties' positions and balancing the requisite factors, the Court finds that Plaintiffs have not met their burden for the issuance of a preliminary injunction. First, Plaintiffs have not shown a strong likelihood of success on the merits. Defendant seeks to cease ALE payments because the period of restoration has expired, even though construction on Plaintiffs' home is not complete. Plaintiffs assert that they are unable to fully restore their home

3

because Defendant provided insufficient funds. Thus, the central issue on the merits is whether Defendant breached the insurance contract by failing to pay for certain damages: that is, the cracked foundation and accompanying water damage.[1]

While federal law governs the factors to be considered on a motion for preliminary injunction, the Court must apply state law to determine whether Plaintiffs have shown a likelihood of success on the merits on the underlying diversity action. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). Under Tennessee law, "[i]nsurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). The insurance contract "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006).

Here, the insurance contract provides that loss caused by "[s]ettling, shrinking, bulging or expansion, including resultant cracking, or bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings" is excluded from coverage [Doc. 1-2, pg. 63]. The contract further excludes loss caused by "[w]ater below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure" [*Id*. at pg. 66]. Based on the plain reading of the contract and the limited evidence presented to the Court at the preliminary hearing, the Court is unable to conclude that Plaintiffs are likely to succeed on the merits regarding the damage to Plaintiffs' foundation and resulting damage from water intrusion. Plaintiffs assert that their home was

---

[1] Plaintiffs assert that Defendant also breached the contract by failing to provide a "pack out" for their personal property in the house. However, it appears that the discovery of the cracked foundation and Defendant's partial denial of coverage for such damage at the end of July 2020 is the main reason restoration of the home came to a standstill.

4

habitable prior to the April 12, 2020 tornado and that all the damage occurred on or after that date. Yet, Plaintiffs do not rebut Defendant's claim that the wood behind the sheetrock in the basement was discovered to be rotted just over 3 months after the tornado. Therefore, Plaintiffs failed to show a strong likelihood of success on their claim that Defendant breached the insurance contract by denying coverage for such damage.

Next, Plaintiffs have not established that they will suffer irreparable harm in the absence of an injunction. Plaintiffs requesting a preliminary injunction must demonstrate that irreparable harm is not merely possible, but likely. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Plaintiffs assert that they will suffer immediate and irreparable financial and physical harm if Defendants stop ALE payments, because they will have to pay both the mortgage on their home and rent for temporary housing and, if they cannot meet those financial obligations, they will be evicted and forced to return to their uninhabitable home. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). It follows that "[t]he fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." *Id*. at 579. The termination of ALE payments in this case is akin to withholding income, which is compensable by the monetary damages Plaintiffs seek in the underlying action.

With respect to loss of housing, courts within the Sixth Circuit have examined similar circumstances and held that a "threat of eviction and the realistic prospect of homelessness constitute" a likelihood of irreparable harm for purposes of a preliminary injunction, *Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 714 (E.D. Mich. 2010), but "[a]n inability to meet

5

one's present level of expenses does not lead ineluctably to homelessness." *Hayes v. Liberty Ins. Corp.*, No. 11-CV-15520, 2012 WL 12930667, at *3 (E.D. Mich. July 24, 2012). In *Smith*, the plaintiffs provided a financial affidavit indicating that their family faced "the real prospect of being without a place to live" if the insurance company discontinued ALE payments. *Smith*, 737 F. Supp. 2d at 714. Therefore, the court found that this constituted irreparable harm and required the insurance company to continue ALE payments during a two-month appraisal period. *Id*. In contrast, the plaintiffs in *Hayes* merely stated in their verified complaint that they could not afford to pay their normal living expenses, including their mortgage, and the additional living expenses. *Hayes*, 2012 WL 12930667 at *3. The court found these allegations insufficient, holding that "[t]o the extent that Plaintiffs' allegations of harm go only to the loss of the ALE funds, rather than a credible threat of homelessness, such harm is not considered irreparable as a matter of law." *Id*.

  Here, Plaintiffs allege that they may not be able to afford their mortgage and temporary housing expenses. However, Plaintiffs offer no proof that they face a real threat of homelessness or eviction. Moreover, Plaintiffs request the continuance of ALE payments until resolution of the underlying action, which would be a significant amount of time compared to the two-month period in *Smith*. Despite receiving ALE for over one year and numerous extensions to the period of restoration, which Defendant initially estimated to be four months, the necessary repairs to make Plaintiffs' home habitable are not complete. The repairs are not complete due to lack of funding, which leads back to the parties' dispute concerning covered losses. If such losses are determined to be covered, Plaintiffs may recover any wrongly withheld ALE payments through monetary damages. Based on the foregoing, the Court finds that Plaintiffs have failed to establish irreparable harm.

Finally, the parties have not presented sufficient evidence as to substantial harm to others or why a preliminary injunction would benefit or adversely affect the public interest. Regardless, the failure to establish a strong likelihood of success on the merits and the lack of irreparable harm weigh heavily against granting a preliminary injunction. Most importantly, Plaintiffs have an adequate remedy at law.

## IV. CONCLUSION

Accordingly, Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 10] is **DENIED**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge